UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jeremy Ned

    v.                                      Case No. 15-cv-178-LM

Esker Tatum, Warden,
FCI-Berlin

**REPORT AND RECOMMENDATION**

When he filed his original petition in this case, Jeremy Ned was an inmate in the Federal Correctional Institution in Berlin, New Hampshire. Pursuant to 28 U.S.C. § 2241, he seeks a writ of habeas corpus, claiming that while he was incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI-Loretto"), prison officials violated his constitutional rights when they inadequately investigated the ownership of a weapon they found affixed to the bottom of his locker and then disciplined him for possessing it. As a remedy, he asks the court to order the expungement of the disciplinary report that charged him with possessing the weapon, and restoration of the good time credits he lost as a sanction for being found guilty on the weapon-possession charge. Before this magistrate judge for a report and recommendation are cross motions for summary judgment, each of which has been opposed. For the reasons that

follow, petitioner's motion should be denied, and respondent's motion should be granted.

## Summary Judgment Standard

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). Moreover, the fact "[t]hat each side cross-moved for summary judgment does not warp this line of inquiry: '[b]arring special circumstances, the [judge] must consider each motion separately, drawing inferences against each movant in turn.'" Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 84 (1st Cir. 2016) (quoting EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

## Petitioner's Motion

Notwithstanding the requirements of Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1(a), petitioner's motion for summary judgment literally says

nothing about the factual basis for his claim, and it does not, in any way, direct the court to any facts in the summary judgment record that would support his claim. Accordingly, petitioner's motion for summary judgment should be denied.

## **Respondent's Motion**

### I. **Background**

For the purposes of ruling on respondent's motion for summary judgment, the following facts are undisputed. On September 7, 2014, while Ned was incarcerated at FCI-Loretto, a correctional officer ("CO") conducted a shakedown of Ned's cell.[1] During the search, the CO found an eight-inch homemade weapon that had been affixed to the bottom of Ned's locker with a magnet. Based on that discovery, Ned was charged with "[p]ossession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any instrument used as a weapon." Resp't's Mot.

---

[1] In his objection to respondents' motion for summary judgment, petitioner complains that "the hearing officer [who conducted his disciplinary hearing] as well as the administration erred by not telling the Court that there are 20 inmates assigned to this cell that the U.S. Attorney keeps referring to as mine." Pet'r's Obj. (doc. no. 31), at 2. However, he has produced no evidence that he ever brought the size of his cell to the attention of the DHO or that the DHO had any independent knowledge of his housing situation.

Summ. J., Ex. 1, Magnusson Decl. (doc. no. 28-1), ¶ 4.

Ned's charge resulted in a hearing before a Discipline Hearing Officer ("DHO").  At the hearing, Ned had the assistance of a staff representative, called another inmate as a witness, and stated that he had no documentary evidence to present.  In a decision finding Ned guilty of possessing a weapon, the DHO described the evidence supporting the decision in the following way:

> The DHO based this finding upon the reporting officer's written statement; Officer B. Jozwiak reported on September 7, 2014, at 11:15 a.m., he was conducting a random shakedown of Room K05-27 and was searching under the locker assigned to inmate Ned . . . when he felt something under the locker.  Officer Jozwiak stated upon further investigation he found an 8" homemade weapon affixed under the locker by a magnet.
>
> The DHO considered the Photograph of weapon found in K05-27 under the assigned locker of Ned, Jeremy . . .
>
> The DHO considered the memorandum dated September 7, 2014 from Officer B. Jozwiak to Lieutenant Miller.
>
> Also, the DHO considered your testimony during the DHO hearing in which you deny the incident report is true.  You deny knowledge, or ownership of the home made sharpened weapon found in your assigned living area under your assigned locker.  You were not able to supply the DHO with the name of whom you suspected, placed the weapon under your assigned locker, or give the DHO a reasonable explanation or evidence why someone would set you up and place a weapon underneath your assigned locker.
>
> . . . .

> Also the DHO considered the live testimony of your requested inmate witness, during the DHO hearing.

Magnusson Decl., Attach. (doc. no. 28-2), at 4. In addition, in the context of explaining why Ned's denial of the charge against him was not credited, the DHO pointed out that according to prison regulations, "[i]t is each inmate's responsibility to ensure their assigned area is free of unauthorized items; this is outlined in the FCI Loretto Inmate Admission & Orientation Handbook, which you admit receiving and reading." Id.

After finding Ned guilty of possessing a weapon, the DHO imposed several sanctions, including disallowance of 40 days of good conduct time. Ned appealed the decision of the DHO. The Regional Director for the Bureau of Prisons who adjudicated Ned's first-level appeal issued a decision that states, in pertinent part:

> Program Statement 5270.09, Inmate Discipline, states it is an inmate's responsibility to keep his or her area free of contraband. You are responsible for all items in your cell. Your contention the locker was not assigned to you is irrelevant. Your personal items were stored in the locker and the locker was in your living area.

Magnusson Decl., Attach. (doc. no. 28-2), at 4.

Based upon the foregoing, Ned filed a petition for a writ of habeas corpus asserting a claim that has since been dismissed

5

as moot. See Order (doc. no. 18), at 2. In a supplement to his original petition, Ned asserted the following new claim:

> I had been falsely accused when the Loretta officers searched my cell and discovered a shank when I was not present. I had been on the recreation [yard] on the day this search occurred. Another prisoner or inmate had planted this weapon in my cell. I had asked the DHO officials to conduct a fingerprint analysis on the weapon as well as under my locker where the alleged weapon had been found after the officials received a note/message form an unknown source that the petitioner was in possession of a shank or knife or weapon[.]

Pet'r's Response (doc. no. 15), at 5. In a subsequent report and recommendation, the court framed Ned's supplement as asserting a claim that his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution was violated by prison officials who: (1) failed to adequately investigate the ownership of the weapon that was found under his locker; (2) denied him access to an informant's statement and identity; and (3) found him guilty of possessing a weapon without adequate evidence.

## II. Discussion

Respondent moves for summary judgment, arguing that the undisputed facts demonstrate that the manner in which prison officials handled Ned's disciplinary proceeding was constitutionally sufficient. The court agrees.

A.   Legal Principles

While the Supreme Court and the court of appeals for this circuit have both assumed, rather than holding, that prison inmates have a constitutionally protected liberty interest in good time credits, see Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453 (1985); Lother v. Vose, 89 F.3d 823, 1996 WL 345958, at *1 (1st Cir. 1996) (per curiam, unpublished table decision), that proposition appears to be broadly accepted, see, e.g., Pryor v. Grondolsky, Civ. Action No. 14-10181-LTS, 20. 15 WL 1268164, at *2 (D. Mass. Mar. 19, 2015) ("federal prison inmates have a protected liberty interest in good time credits") (citing Hill, 472 U.S. at 447; Cavounis v. Grondolsky, Civ. No. 13-11310-FDS, 2014 WL 347622, at *2 (D. Mass. Jan. 29, 2014)); Addison v. FCI Berlin, Warden, No. 15-cv-137-JD, 2016 WL 123346, at *2 (D.N.H. Jan. 11, 2016).

To the extent that prison inmates have a liberty interest in good time credits, the constitution protects that interest with a right to due process, which requires that

> [w]here a prison disciplinary hearing may result in the loss of good time credits . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement

7

> by the factfinder of the evidence relied on and the
> reasons for the disciplinary action.

Hill, 472 U.S. at 454 (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). In addition, "revocation of good time does not comport with 'the minimal requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." Id. (quoting Wolff, 418 U.S. at 558) (emphasis added). Finally,

> [a]scertaining whether [the "some evidence"] standard
> is satisfied does not require examination of the
> entire record, independent assessment of the
> credibility of witnesses, or weighing of the evidence.
> Instead, the relevant question is whether there is any
> evidence in the record that could support the
> conclusion reached by the disciplinary board. See
> ibid.; United States ex rel. Tisi v. Tod, 264 U.S.
> 131, 133-134 (1924); Willis v. Ciccone, 506 F.2d 1011,
> 1018 (CA8 1974).

Hill, 472 U.S. at 455-56 (parallel citations omitted, emphasis added). The due process rights described above are often referred to as the "Wolff requirements." See, e.g., Brennan v. United States, 646 F. App'x 662, 666 (10th Cir. 2016). With the Wolff requirements in mind, the court turns to each of Ned's three claims.

    B.    Failure to Investigate

Ned first complains about the failure of prison officials to undertake a more thorough investigation into the ownership of

the weapon that was found underneath his locker. Specifically, he faults prison officials for failing to collect fingerprints from the weapon and the bottom of his locker. He does not, however, couch his failure-to-investigate claim in terms of any of the three procedural Wolff requirements, and the only one that could possibly apply is the second, the right to present evidence.

However, "the opportunity to present documentary and other evidence has never been extended to require prison officials to gather . . . or preserve evidence that a prisoner may later find helpful." Whitmore v. Jones, 490 F. App'x 122, 125 (10th Cir. 2012); see also Abdulhaseeb v. Ward, 173 F. App'x 658, 661 (10th Cir. 2006) (rejecting petitioner's claim that "prison officials violated his due process rights by failing to . . . conduct an independent investigation to discover exculpatory and mitigating evidence on his behalf").

Indeed, in a case in which a prisoner asserted, in a § 2241 petition, "that prison officials erred by failing to conduct a laboratory test to determine whether the doctored soda can found in his room was actually used to smoke marijuana," Rhatigan v. Ward, 187 F. App'x 889, 890-91 (10th Cir. 2006), the court of appeals disagreed, holding that "[u]nder Hill, this is not a due

9

process violation," id. at 891.  So too, here.  Ned's due process right to present evidence at his hearing did not obligate prison officials to collect and analyze fingerprints as part of an investigation into the ownership of the weapon that was found affixed to his locker.[2]  Accordingly, as to Ned's first claim, respondent is entitled to judgment as a matter of law.

    C.   Access to Informant Statement

The court has construed Ned's petition to assert a claim that his hearing did not comport with the requirements of due process because he was denied access to an informant's statement or identity.[3]  That claim, in turn, appears to grow out of: (1) petitioner's allegation that his cell was searched as a result of a tip that correctional officers received from an unidentified source; and (2) the DHO's statement that petitioner was unable to provide any specific evidence, such as the identity of an antagonist, to support his theory that the weapon found during the shakedown had been placed under his locker by

---

[2] Moreover, as respondent points out, even if fingerprints other than Ned's were found on the weapon, that would not be exculpatory evidence, given the prison regulations that make inmates responsible for keeping their assigned areas free of unauthorized items.

[3] As with petitioner's first claim, he does not identify the specific Wolff requirement at issue, but, again, the only plausible one is the right to present evidence.

someone trying to set him up for a disciplinary infraction.  In his objection to respondent's motion for summary judgment, petitioner revises his claim a bit, identifying as a due process violation the failure of prison officials to provide him with the names of the other inmates with whom he shared his cell. However, neither a failure to provide Ned with the name of the alleged informant nor a failure to provide him with a list of his cellmates would give rise to a due process violation.

If Ned's claim is that his right to due process was violated by prison officials who denied him access to an informant's statement or identity, that claim fails as a matter of law.  In Abdulhaseeb, the court of appeals rejected a petitioner's claim that "prison officials violated his due process rights by failing to . . . supply him with a detailed description of the offense, in particular who 'tipped' the reporting officer to the fact that he had sent a letter to a former employee."  173 F. App'x at 661.

The reasoning behind that decision may be gleaned from Espinoza v. Peterson, 283 F.3d 949 (8th Cir. 2002).  In that case, the petitioner claimed "that he was denied procedural due process because [certain confidential information the DHO relied on] was [not] disclosed to him during the prison disciplinary

11

proceedings," id. at 952, and that "disclosure of the identity of the confidential informant and the specifics of the informant's statement were essential to challenging the credibility of the informant, the veracity of the confidential information, and the sufficiency of the evidence supporting the hearing officer's decision," id.  The court of appeals disagreed, and explained its decision this way:

> [B]ecause the overarching due process concern is whether "some evidence" supports the disciplinary decision, a reviewing court must examine the reason for non-disclosure and the reliability of the confidential informant only in cases where the confidential information is needed to satisfy the some evidence standard, as in Freitas [v. Auger], 837 F.2d [806,] 811 [(8th Cir. 1988)], and in Goff [v. Burton], 91 F.3d [1188,] 1192 [(8th Cir. 1996)].  When there is other evidence supporting the disciplinary decision, due process is satisfied "without determining the reliability of the confidential informant" or the institutional reasons for non-disclosure.  Turner v. Caspari, 38 F.3d 388, 393 (8th Cir. 1994).  Any other rule would violate the core principle that the some evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Superintendent v. Hill, 472 U.S. at 455.

Id. (parallel citation omitted, emphasis added).

In Espinoza, the DHO relied upon confidential information in rendering a decision, but because there was other evidence, failure to disclose the confidential information was not a due process violation.  Here, by contrast, the DHO report expressly

12

stated that the DHO did not use any confidential information to support his findings so, necessarily, this is not a case in "where the confidential information [was] needed to satisfy the some evidence standard," id.  Thus, Ned had no right to that information in the first instance.  Accordingly, to the extent that petitioner claims that his due process rights were violated by the failure to provide him with the purported informant's statement and identity, respondent is entitled to judgment as a matter of law.

On the other hand, if petitioner's claim is that his right to due process was violated by prison officials who refused to provide him with the names of his cellmates, that claim also fails.  As best the court can tell, Ned wanted the names of his cellmates for the same reason he wanted to know the identity of the informant: so he could develop and present evidence that some other inmate affixed the weapon to the bottom of his locker, perhaps to set him up.  However, as respondent points out, FCI-Loretto maintains a policy that makes inmates responsible for keeping their assigned areas free of unauthorized items.  For that reason, even if Ned were able to use the names of his cellmates to identify a cellmate who could testify that some inmate other than Ned placed the weapon under

13

his locker, that evidence would not be exculpatory. That is because once the weapon was affixed to Ned's locker, he became responsible for it. Accordingly, any failure to provide Ned with information he could use to identify an inmate who affixed the weapon to his locker was a harmless error, at worst. See Brennan, 646 F. App'x at 666 ("A DHO's failure to comply with the Wolff requirements is harmless when it does not prejudice an inmate's preparation or defense at a hearing.") (citing Mendoza v. Tamez, 451 F. App'x 715, 717 (10th Cir. 2011)). An inmate is not entitled to § 2241 relief on a due process claim when prison officials commit a harmless error. See, e.g., Tigert v. Higgins, 290 F. App'x 93, 100-101 (10th Cir. 2008); Brown v. Wyo. Dep't of Corr. State Penitentiary Warden, 234 F. App'x 874, 879 (10th Cir. 2007) ("a prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony 'would have affected the outcome of his case'") (quoting Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993)).

In sum, to the extent that petitioner claims that his due process rights were violated by the failure to provide him with the names of his cellmates, respondent is entitled to judgment as a matter of law.

D.  Sufficiency of the Evidence

Petitioner's final claim is that the DHO's decision was not supported by sufficient evidence.  He is mistaken.

As the Supreme Court explained in Hill, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." 472 U.S. at 457.  Indeed, the "some evidence" standard may be met by indirect evidence.  See id.; see also Bullock v. McGinnis, 14 F.3d 604, 1993 WL 533325, at *2 (7th Cir. 1993) (unpublished table decision) ("While the adjustment committee's evidence is circumstantial, we cannot say that [its decision] was not supported by 'some evidence.'").  Furthermore, the "some evidence" standard may be met by "evidence . . . [that] might be characterized as meager." Hill, 472 U.S. at 457.  All that is necessary is that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id.  That standard, which has been characterized as both "quite deferential," Lloyd v. Shartle, 514 F. App'x 77, 79 (3rd Cir. 2013), and "lenient," Higgason v. Hanks, 64 F. App'x 556, 557 (7th Cir. 2003), is satisfied by the evidence on which the DHO relied in this case.

In the report that resulted from Ned's hearing, the DHO identified the evidence supporting the decision as including: (1) Officer Jozwiak's Incident Report; (2) Officer Jozwiak's follow-up memorandum; and (3) a photograph of the weapon that was found under Ned's locker. It is well established that an incident report such as the one in this case meets the "some evidence" standard. See, e.g., Ortiz v. Holt, 390 F. App'x 150, 152 (3rd Cir. 2010); Higgason, 64 F. App'x at 557 (citing McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999)). Because the DHO's decision was based upon some evidence, respondent is entitled to judgment as a matter of law on petitioner's claim that the decision did not have adequate evidentiary support.

That said, there is one issue that merits further discussion. In his objection to respondent's motion for summary judgment, petitioner criticizes respondent for not informing the court that his living area was not a traditional cell but, rather, was occupied by 20 inmates, all of whom had access to the underside of his locker. In Hamilton v. O'Leary, an inmate was found guilty of possessing six weapons that were found in a vent that was accessible to Hamilton's cell and to seven other cells, which housed 31 other inmates. See 976 F.2d 341, 343

(7th Cir. 1992).  The weapons were attributed to inmate Hamilton by means of "the prison's constructive possession rule, which [held] Hamilton 'responsible for whatever is found in [his] cell.'"  Id. at 345.  The court of appeals was persuaded by Hamilton's argument "that the constructive possession rule cannot provide a sufficient basis for the Adjustment Committee's decision . . . because the weapons were found in a vent to which 32 inmates had access."  Id. at 345.  As the court explained, "if, as Hamilton alleges, the weapons could have been tossed in the vent by any one of 32 inmates, then there is only a 3.1% chance that Hamilton is guilty; we doubt that a 3.1% chance is 'some evidence' of guilt."  Id.

Ultimately, however, the court affirmed the district court's decision to dismiss Hamilton's claim that the Adjustment Committee violated his due process rights.  See Hamilton, 976 F.2d at 342.  It based its decision on the fact that Hamilton "did not tell the Adjustment Committee that 32 inmates had access to the vent, and [that] there [was] nothing in the amended complaint from which such knowledge could be inferred." Id. at 345.  A similar result is warranted in this case.  There is nothing in the summary judgment record to indicate that Ned ever told the DHO about the number of inmates who shared his

living area. Specifically, that matter is not mentioned in the DHO's summary of Ned's testimony, the DHO's summary of Ned's witness's testimony, the Officer Jozwiak's Incident Report, or Officer Jozwiak's follow-up memorandum. For his part, petitioner has produced no evidence on this point.[4] Thus, he has not created a factual dispute on this issue that could preclude summary judgment.

    E.    Wolff Analysis

Having rejected all three of petitioner's claims, the court concludes in the way that most discussions of claims such as this conclude, with an item-by-item consideration of the Wolff requirements. See Hill, 472 U.S. at 454. First, Ned does not claim that he was not given advance written notice of his disciplinary charges. Second, he did call a witness, see Magnusson Decl., Attach (doc. no. 28-2), at 3, and was given an opportunity to present documentary evidence, but declined to do so, see id. at 4. Third, he does not claim that he was not given a written statement by the factfinder and, indeed,

---

[4] Petitioner did mention that he had 15 cellmates in both his first-level and second level appeals from the DHO's decision. See Magnusson Decl., Attach. (doc. no. 28-2), at 20, 23. However, "only evidence that was presented to the [DHO] is relevant to [the court's] analysis." Bullock, 1993 WL 533325, at *2 (citing Hamilton, 976 F.2d at 346).

respondent has produced the four-page DHO report that resulted from Ned's hearing. Finally, as the court has already stated, the DHO's decision was supported by some evidence. Accordingly, respondent is entitled to judgment as a matter of law on petitioner's claim that his right to due process was violated by the manner in which he was disciplined at FCI-Loretto for possessing a weapon.

## Conclusion

For the reasons detailed above, petitioner's motion for summary judgment, document no. 24, should be denied, and respondent's motion for summary judgment, document no. 28, should be granted.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are

precluded on appeal).

                                         _____
                                         Andrea K. Johnstone
                                         United States Magistrate Judge

May 16, 2017

cc:   Jeremy Ned, pro se
      Seth Aframe, Esq.